## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | **Case No: 21-MJ-140** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **SCOTT KEVIN FAIRLAMB,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## MOTION FOR EMERGENCY STAY AND FOR
## REVIEW AND APPEAL OF A RELEASE ORDER

*COMES NOW*, the United States of America, by and through its Attorney, the Acting

United States Attorney for the District of Columbia, respectfully to move this Court, first, to stay

Defendant Scott Kevin Fairlamb's release pending trial, and, second, to hear an appeal to review

and overturn a New Jersey Magistrate Judge's denial of the Government's motion for pre-trial

detention.   In support whereof, we submit as follows:

## BACKGROUND

On January 21, 2021, U.S. Magistrate Judge Robin M. Meriweather issued a warrant to

arrest the defendant on violations of 18 U.S.C. § 231(a)(3) (Certain Acts During Civil Disorder),

18 U.S.C. § 111(a)(1) (Assaulting a Federal Officer), 18 U.S.C. §§ 1752(a)(1)-(4) (Restricted

Building or Grounds); 18 U.S.C. § 1752(b)(1)(A)(Carrying a Dangerous Weapon), and 40 U.S.C.

§ 5104(e)(2) (Violent Entry or Disorderly Conduct) stemming from the defendant's involvement

in the insurrection at the United States Capitol on January 6, 2021.

On January 22, 2021, FBI agents arrested the defendant at his residence in Stockholm, New

Jersey, and brought him before a U.S. Magistrate Judge in the District of New Jersey for an initial

appearance and removal to this District.   At a hearing this afternoon, the government asked the

Court to detain the defendant without bail pending removal and trial in this district.   U.S.

Magistrate Judge James B. Clark, III denied this detention motion and released the defendant.

Judge Clark granted the government's request for a stay of the defendant's release to allow the government to appeal the decision.

From that release order, the government hereby appeals.   We also ask this Court to stay defendant's release pending a hearing on this appeal.   Jurisdiction over this review and appeal lies in this Court, rather than to a judge in New Jersey, pursuant to 18 U.S.C. § 3145(a)(1) (when defendant is released by person other than judge of court having original jurisdiction over offense, government's appeal lies to court of original jurisdiction).

## DETAILS OF THE DEFENDANT'S CONDUCT

The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.   On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m.   Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.   Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President

2

Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building.   The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume

until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.   The proceedings resumed at approximately 8:00 pm after the building had been secured.   Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

During the insurrection, and to assist the U.S. Capitol Police in restoring order, uniformed members of the Washington, D.C. Metropolitan Police Department arrived at the Capitol, including Officer 1.

A concerned citizen ("C-1") submitted a video to the FBI (Video 1), which captured a white male in a brown camouflage jacket, later identified as the defendant, shove and punch Officer 1 on the West Front of the Capitol.   At :16s in Video 1, the defendant shoves Officer 1.



At :20s in Video 1, the defendant punches Officer 1 in the head.



Officer 1's Body Worn Camera (BWC) footage captured the defendant following the assault.   At :08s the BWC depicts the defendant wearing a brown camouflage jacket, black knit hat, blue jeans and bright red shoes (circled in red below):



The defendant (circled in red below) is recorded from the front on Officer 1's BWC at :17s.

5



Officer 1 further described the person who assaulted him as a white male with a beard and a brown camouflage jacket.

A second concerned citizen ("C-2") submitted a video to the FBI ("Video 2"), which was a Facebook post from the defendant's account.   In the video, the defendant is carrying a collapsible baton and says: "What Patriots do? We fuckin' disarm them and then we storm fuckin' the Capitol."   C-2 identified the man in Video 2 as the defendant from New Jersey.   C-2 stated the defendant recently deleted the videos he took entering and inside the Capitol and that Video 2 below was the only one that remained on the defendant's Facebook account:

6



A third concerned citizen ("C-3") submitted a video to the FBI ("Video 3"), which depicted the defendant (circled in red below) standing on the scaffolding erected on Capitol grounds.   The scaffolding was located at the western front face of the Capitol building. The following is a still image from Video 3:



Another concerned citizen ("C-4") identified the man (circled in red above) on the scaffolding as the defendant.   C-4 stated he/she grew up with the defendant, and that the defendant lives in Butler, NJ, and has Instagram account "fairlambfit" and Facebook account "Scott Fairlamb."   C-4 stated the defendant made a video of himself saying they are going to disarm

them and then storm the capital (a reference to Video 2).

A clip from later in Video 3 depicted the defendant picking up a baton from the ground just after the skirmish line on the Capitol West Terrace was breached and putting it under his arm. The following are still images from Video 3:

 

Another clip from later in Video 3 depicted the defendant (circled in red below) exiting the Capitol building and coughing after chemical agents were deployed inside.   The following is a still image from Video 3:



Utilizing various investigative methods, including law enforcement database searches, FBI

personnel confirmed that the defendant has a registered driver's license with the New Jersey Department of Motor Vehicles ("DMV").   The residential address listed on the driver's license is Stockholm, New Jersey.   Law enforcement reviewed images of the defendant in Videos 1-3 and MPD Officer 1's BWC, and compared those photographs with the defendant's DMV photo.   The defendant's facial features in his DMV photo appear to match those of the individual in Videos 1-3 and MPD Officer 1's BWC, and they appear to be the same person.

In addition, law enforcement compared the tattoo on the defendant's left hand from a video posted to his Facebook account with Videos 1 and 2 (all circled in red below) and they appear to be the same person.

  

When the defendant was arrested on January 22, 2021, he was wearing the same camouflage jacket he was wearing on January 6, 2021, as depicted in Videos 1 through 3, and the BWC video.   Following the defendant's arrest, law enforcement executed a search warrant at the defendant's residence.   During the search, law enforcement recovered the black hat and red shoes the defendant was wearing on January 6, 2021, in addition to the collapsible baton and two shotgun shells.[1]

---

[1]      The defendant has a criminal history, including a prior felony conviction which

Today, the government sought the defendant's detention.  The defendant is eligible for detention pursuant to 18 U.S.C. § 3142(f)(1)(E), on the ground that the defendant has been charged with an offense involving the possession or use of a dangerous weapon, to wit, one count of Carrying a Dangerous Weapon, in violation of 18 U.S.C. § 1752(b)(1)(A).   The defendant also is eligible for detention. pursuant to 18 U.S.C. § 3142(f)(2)(B), on the ground that there is a serious risk that the defendant will obstruct or attempt to obstruct justice based on his assault on a federal officer and obstructive and disruptive conduct at the U.S. Capitol.

Magistrate Judge Clark denied the government's detention motion and admitted the defendant to bail.  Specifically, he released the defendant home detention with electronic monitoring, and restricted travel to New Jersey and the District of Columbia (court purposes only).

The government hereby appeals and seeks review of that release order and also asks this Court to interpose its own stay of the order until a hearing on this motion can be held.

## ARGUMENT

Title 18, U.S.C. § 3145(a) states:

    **(a) Review of a release order –** If a person is ordered released by a magistrate, . . .

        **(1)** the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

    The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention.  In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and

_____

prohibits him from possessing ammunition.

argument.   It may take additional evidence from new witnesses or consider arguments not raised

previously.   In short, the Court may proceed as best enables it to resolve the question posed:

whether any condition or combination of conditions will reasonably assure the appearance of the

person as required and the safety of any other person and the community?   As the legislative

history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to
> the danger that the defendant might engage in criminal activity to
> the detriment of the community.   The committee intends that the
> concern about safety be given a broader construction than merely
> danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News

3182, 3195-3196.[2]

---

[2]   To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the
current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . .
> determination that Federal bail laws must . . . give the courts
> adequate authority to make release decisions that give appropriate
> recognition to the danger a person may pose to others if released. . .
> .   The constraints of the Bail Reform Act fail to grant the Courts
> the authority to impose conditions of release geared toward assuring
> community safety, or the authority to deny release to those
> defendants who pose an especially grave risk to the safety of the
> community.   . . . ***This broad base of support for giving judges the
> authority to weigh risks to community safety in pretrial release
> decisions is a reflection of the deep public concern, which the
> Committee shares, about the growing problem of crimes
> committed by persons on release.***

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News
3182, 3486-3487. (Emphasis added.)

11

For the reasons stated herein, the government prosecutes this appeal of Magistrate Judge Clark's decision to release the defendant and seeks a stay of the order from this Court.

**WHEREFORE**, the United States respectfully prays this Honorable Court to stay the order releasing Defendant Scott Kevin Fairlamb, to convene a hearing to review the decision to release Scott Kevin Fairlamb and to order instead that he be held without bond pending trial.

Date: January 22, 2021

Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney
for the District of Columbia
New York State Bar Reg. No. 4444188


By:      _/s/_ David B. Kent
DAVID B. KENT, D.C. Bar No. 482850
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7762
David.Kent@usdoj.gov

_/s/_ Gauri Gopal
GAURI GOPAL
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7230
Gauri.Gopal@usdoj.gov