**THE LAW OFFICE OF HARLEY D. BREITE**
562 Black Oak Ridge Road
Wayne, N.J. 07470

RECEIVED
APR 21 2021
CHAMBERS OF
JUDGE LAMBERTH

Phone- 973-872-0604　　　　　　　　　Fax- 973-305-9112
Member - N.Y., N.J., PA & DC Bar　　　LL.M. (Master of Laws) in Trial Advocacy

April 21, 2021

Hon. Royce C. Lamberth
United States District Judge
United States District Courthouse
333 Constitution Avenue NW
Washington, D.C. 20001

*Let this be filed.*
*Royce C. Lamberth*
*U.S.D.J. 4/21/21*

Re: United States of America vs. Scott Kevin Fairlamb
　　Case No. 1:21-CR-00120-RCL

## MEMORANDUM IN SUPPORT OF PRE-TRIAL RELEASE

Dear Judge Lamberth,

　　I respectfully request that Your Honor consider this submission on behalf of my client, Scott Kevin Fairlamb, in connection with his Detention Hearing scheduled for Friday, April 23, 2021 at 2:00 pm.

　　The Defendant should not be detained pending trial for the reasons stated herein as there are a plethora of conditions, solely or in combination, that ensure the safety of the community and that he is not a risk of flight.

## PROCEDURAL HISTORY

　　On January 22, 2021, the Defendant was peacefully arrested at his home in New Jersey without incident on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Robin M. Meriweather.

　　On January 22, 2021, the Defendant appeared in the United States District Court for the District of New Jersey for his Initial Appearance. During that appearance, the Government made a motion to detain the Defendant without bond pending trial. Subsequent to oral argument, U.S. Magistrate Judge James B. Clark III denied the Government's motion for detention and released the Defendant. Immediately thereafter, the Government requested a stay of the Defendant's release in order to appeal the Court's decision. Judge Clark granted the Government's request. On that same day, the Government filed a Motion for Emergency Stay and Review and appeal of a Release Order (ECF No. 7) and a Motion for Transport Order (ECF N0. 8). On that same day, Chief Judge Beryl A.

Howell granted the Government's Motion for Emergency Stay and Review (ECF No. 9) and the Motion for Transport (ECF No. 10).

On April 7, 2021, a superseding indictment was returned in the District of Columbia charging the Defendant with the following crimes:

1. Civil Disorder in violation of Title 18, U.S.C., Section 231(a)(3).
2. Obstruction of an Official Proceeding and Aiding and Abetting in violation of Title 18, U.S.C., Section 1512(c)(2) and 2).
3. Assaulting, Resisting, or Impeding Certain Officers in violation of Title 18, U.S.C., Section 111(a)(1).
4. Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon in violation of Title 18 U.S.C., Section 1752(a)(1) and (b)(1)(A).
5. Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of Title U.S.C., Section 1752(a)(2).
6. Impeding Ingress and Egress in a Restricted Building on Grounds in violation of Title 18 U.S.C., Section 1752(a)(3).
7. Engaging in Physical Violence in a Restricted Building or Grounds in violation of Title 18 U.S.C., Section 1752(a)(4).
8. Disorderly Conduct in a Capitol Building in violation of Title 40 U.S.C., Section 5104(e)(2)(D).
9. Impeding Passage Through the Capitol Grounds or Buildings in violation of Title 40 U.S.C., Section 5104(e)(2)(E).
10. Act of Physical Violence in the Capitol Grounds or Buildings in violation of Title 40 U.S.C., Section 5104(e)(2)(F)
11. Parading, Demonstrating, or Picketing in a Capitol Building in violation of Title 40 U.S.C., Section 5104(e)(2)(G).
12. Stepping, Climbing, Removing, or Injuring Property on the Capitol Grounds in violation of Title 40 U.S.C., Section 5104(d).

## BAIL ARGUMENT

The Court can order pre-trial detention if the Government proves that the defendant presents a risk of flight or is a danger to the community.

During Defendant's initial Detention Hearing, the Government conceded that the Defendant was not a risk of flight. Judge Clark, in his ruling to release the Defendant, addressed the Defense's argument that the Government never once argued that the Defendant, was, in fact, a risk of flight. Judge Clark found that the Defendant was not a risk of flight.

In the Government's Memorandum In Support of Pre-Trial Detention, there again is not one word regarding risk of flight. The Court is urged to conclude that the Government's position that the Defendant is not a risk of flight remains unchanged.

In order to detain a defendant under the theory that he is a danger to the community, the Government must prove, by clear and convincing evidence, that not only is a defendant a potential danger to the community, but also, that there

are no conditions that can reasonably assure the safety of any other person and of the community.

## Defendant's Background

In assessing Mr. Fairlamb's history and characteristics, the Court must consider his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings." 18 U.S.C. Section 3142(g)(3)(A).

Scott Fairlamb, age 44, was born on April 17, 1977. He has lived in New Jersey his entire life.

On Mother's Day, 2012, his parents, while riding a motorcycle, were struck by a car in a head on collision that took the life of his father, Preston Fairlamb. Scott's father was a New Jersey State Trooper. As a result of that accident, his mother, Kathleen Fairlamb, underwent twenty-six surgeries and has become handicapped. She lives in Haskell, New Jersey, close to Scott so that he can help care for her throughout the week.

Scott's brother, Preston Fairlamb, is currently a federal law enforcement agent with the United States Secret Service. Given the surrounding circumstances of the allegations, my client has not communicated with his brother in an effort to ensure the integrity of all parties and to ameliorate any pressure or uneasiness his arrest has caused his brother. Scott's sister, Kimberly Fairlamb, lives close to Scott in Sparta, New Jersey and they have an excellent relationship.

On September 21, 2019, Scott wed Andrea Fairlamb, formerly Andrea Castro. My client's one and only trip outside this country took place approximately four-years ago when he and Andrea traveled to Colombia so that Scott could ask Andrea's grandparents for their blessing to marry Andrea. Scott and Andrea returned to the United States after two-weeks with the blessing of Andrea's grandparents.

The Defendant owns and operates his own gym/training facility, "Fairlamb Fit" since January 22, 2016, located in Pompton Lakes, New Jersey. There is no staff and no payroll because he personally trains the members and ensures the operation and maintenance of the gym himself. His three-month absence has been a massive detriment to the membership and the sustainability of the gym itself. Without his presence, membership continues to diminish at a significant rate and the operating costs remain unpaid. The Defendant's landlord has been understanding, but cannot continue much longer to hold the premises without being paid. I have been in constant communications with Mrs. Fairlamb to advise her as to the operation of the gym during this period. Further detention of the Defendant jeopardizes the entire financial future of he and his wife, something far too punitive at this juncture of the case.

Prior to owning and operating a gym, the Defendant was a security guard at Stevens Institute of Technology in Hoboken, New Jersey. He also graduated

from the Essex County Sheriff's Department Program, a law enforcement-training program.

In May of 2020, the Defendant purchased the family residence at 57 Tamarack Trail in Stockholm, New Jersey. There is an outstanding mortgage on the home of $230,000.00.

The Defendant was diagnosed with Leukemia on October 10, 2010 and underwent aggressive treatments with protracted stays in the hospital. He is still required to take daily medication and remains under the care of Dr. Mohammed Cherry at the Carol G. Simon Cancer Center in Morristown, New Jersey. Mr. Fairlamb is required to have monthly visits and evaluations with Dr. Cherry.

While detained at the Hudson County Jail, on this matter, Mr. Fairlamb suffered a heart attack in February 2021. He is stable and remains in good health. The Defendant is currently confined to his cell for 23.5 hours a day thus precluding him from performing recommended daily therapeutic physical activity as well as benefiting from fresh outdoor air. His doctors recommend that he return to work and perform regular exercise.

Arresting agents confirmed that at the time of his arrest, Mr. Fairlamb was compliant. A search of the residence did not provide any weapons other than 2 shotgun shells and a bow/crossbow that the Defendant uses for hunting only animals that he will eat.

In a January 22, 2021 Pretrial Services Report, Senior Pretrial Services Officer Sandra M. Marin recommended that the Defendant be released on a $50,000 Unsecured Appearance Bond with the following conditions recommended:

1) Pretrial Services Supervision.
2) Home Detention, with electronic monitoring, with exceptions for the following: stationary and verifiable employment; education; religious services; medical treatment, attorney visits; court appearances; or other activities as pre-approved by the Pretrial Services. My client would pay all the cost of the monitoring.
3) For the purpose of Location Monitoring, the Defendant shall install a landline telephone in his residence within 10 days of release, unless waived by Pretrial Services. My client has had a landline telephone installed in his home since his first detention hearing this past January.
4) Surrender all passports/travel documents. Do not apply for new travel documents. My client would submit his United States Passport to Pretrial Services and has no intention of making any new travel documents.
5) Travel restricted to New Jersey, District of Columbia for court purposes only, unless approved by Pretrial Services.
6) Substance abuse testing and/or treatment as directed by Pretrial Services.
7) Maintain current residence or a residence approved by Pretrial Services. My client owns a home on which he pays a mortgage.

4

8) Maintain or actively seek stationary and verifiable employment. Should my client be released, he must immediately return to salvage what remains of his own private business which no one but he can operate.
9) Surrender/do not possess any firearms. All firearms in any home in which the Defendant resides shall be removed, in compliance with New Jersey state law, within twenty-four hours and verification provided to Pretrial Services. The Defendant shall also surrender all firearm purchaser's identification cards and permits to Pretrial Services. Mr. Fairlamb does not own a single firearm. Exhibit 19, found on page 21 of the Government's Memorandum is a photo depicting my client holding two rifles. I can find no other purpose for this photo but to inflame the Court's passions and unfairly impugn the character of Mr. Fairlamb. The Government is correct in writing just above the photo, "But, when the FBI executed a search warrant on the Defendant's residence, they found only ammunition shells." That is because the rifles in the photo do not belong to my client. That photo, taken out of context, capturing just one moment in time, has no relevance and is simply inflammatory.
10) The Defendant is not to enter any government buildings unless required by the government.
11) No contact with victims or witnesses. My client will not use social media for any purposes other than to promote his gym/training center. He will not voice, promote, publish, comment upon or transmit any communications having anything to do with politics or what transpired on January 6, 2021 at the Capitol. While this is a much more far-reaching measure than is recommended by Pretrial Services, my client is intent on maintaining the integrity of the criminal justice process and ensuring that the Court is more than comfortable with the behavior of my client should he be released.
12) Appear at all future court appearances in the District of Columbia. My client has never once failed to appear for any court proceeding.

The Government writes on page 19 of their submitted Memorandum, "Finally, Fairlamb has a long history of defying lawful orders. In May 2020, he announced that he would open his gym, Fairlamb Fit, in defiance of the New Jersey governor's stay-at-home orders. Accordingly, the Court should have no confidence that he would comply with any of this Court's orders if released."

More importantly, Mr. Fairlamb never opened his gym in defiance of the Governor's order. There is often quite a distance between mere words and actual action.

Page 13 of the Government's Memorandum describes what can arguably be seen as the most serious of the charges against the Defendant where he is alleged to have "…violently shoved him (Officer Z.B.) and punched him in the face. As a former MMA fighter, the defendant was well aware of the injury he could have inflicted on Officer Z.B." Footnote 6 on page 13 reads "Officer Z.B.

5

reported to the FBI that he did not sustain injury or seek medical attention." If my client were truly the predatory wrecking machine as he is portrayed by the Government, he would have intended and actually caused something far greater than what is routinely referred to as a misdemeanor simple assault. As far as a "former MMA fighter," my client had literally one mixed martial arts fight.

The Government's assertion that my client "traveled to the Capitol prepared to commit violence" (Page 15- Government's Memorandum) is merely speculation. There is no evidence that my client had any plan or that he took premeditated steps to commit violence at the Capitol. My client did not travel with nor bring any weapon to the Capitol. He found a baton on the floor. There is no evidence that he struck or attempted to strike anyone with a baton. My client never once sought to conceal his identity. If intent to commit a crime may be inferred from one concealing their identity, then the fact that my client never once concealed his face or the uniquely identifying tattoo on his hand should be used to infer that my client lacked any intent to violate any law.

Chief Judge Howell enumerated specific considerations to differentiate the severity of the behavior amongst the hundreds of defendants affiliated with the January 6, 2021 events at the Capitol. See United States v. Chrestman, - - F. Supp. 3d – 2021 WL 765662, at *7 (D.D.C. Feb 26, 2021) (Howell, C.J.). The second of those considerations is whether the defendant "engaged in prior planning before arriving at the Capitol."

District Judge John D. Bates wrote in a Memorandum Opinion dated April 12, 2021, regarding United States of America v. Federico Guillermo Klein (Crim. No. 21-236 (JDB)), in favor of pretrial release, "The next few considerations, however, weigh against detention. Any evidence that Klein planned his conduct before arriving at the Capitol is noticeably absent. See Chrestman, 2021 WL 765662, at *8 ("[S]teps taken in anticipation of an attack on Congress speak volumes to both the gravity of the charged offense, as a premeditated component of an attempt to halt the operation of our democratic process, and the danger a defendant poses.) Here, as in Klein, there has been no evidence proffered by the Government that Mr. Fairlamb's alleged confrontation with law enforcement or even his alleged attempt to breach the Capitol building were premeditated. There is also no evidence that Mr. Fairlamb actually used a dangerous weapon during the riot- i.e., the baton, which the Government concedes, he did not bring with him to the Capitol.

The fifth consideration enumerated by Chief Judge Howell was whether a defendant "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct." See Klein, at 13. Here, there is no evidence that Mr. Fairlamb coordinated with other demonstrators before, during, or subsequent to the riot, or assumed any meaningful leadership role during the riot. Anything Mr. Fairlamb may have said in the District of Columbia on January 6, 2021 may have been repugnant but certainly does not demonstrate that Mr. Fairlamb was a de facto leader of others that day. No leadership role can be attributed to Mr. Fairlamb even if some of his actions are seen as occasionally working with the mob and even contributing to their overall efforts given their spontaneous and unanticipated nature.

The D.C. Circuit recently stated in United States v. Munchel, "[t]o justify detention on the basis of dangerousness, the government must prove by "clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 2021 WL 1149196, at *4 (D.C. Cir. Mar. 26, 2021) (quoting 18 U.S.C. Section 3142(f)). This requires the Government to establish that Mr. Fairlamb poses a continued "articulable threat to an individual or the community" that cannot be sufficiently diminished by release conditions. Id. (quoting Salerno, 481 U.S. at 751). The Government has failed to do so. No specific individual is even remotely threated by Mr. Fairlamb in any real manner so as to cause actual concern.

Judge Bates in his opinion differentiated between defendants who assaulted officers and engaged in planning activities and those defendants who assaulted police officers but did not engage in planning activities. The later, Judge Bates noted, in several cases, were released without objection from the government. See Klein, at 23.

The Government asserts on page 17 of its Memorandum that the "defendant has a significant criminal history of arrest and conviction." Of the five matters listed, one case was "no billed", another case dismissed and another case resulted in a guilty plea to a simple assault. The other two matters dating back to 2008 and 2009 do not amount to a "significant history" especially when one recognizes that neither of those matters resulted in a custodial sentence.

The Government's Exhibit 12 is used to support their claim that my client's alleged "assault of the MPD Officer demonstrates a hair-trigger temper, lack of control, and violent impulses."  While for purposes of a detention hearing, hearsay and proffered evidence are admissible, such a proposition offered at a later juncture would certainly have to have a foundation laid by an expert, such as a psychologist or psychiatrist.

The Government also claims on page 18 of its Memorandum that "the defendant has a history of violent rhetoric. America was founded, in large part, on the principle that the free exchange and flow of ideas, regardless of how abhorrent, lead to a society unabashed to express unpopular minority opinions. Unlike our founding fathers who risked death by merely espousing contrarian views, all persons of the United States of America are free to voice and even champion anti-establishment "rhetoric." What makes the Government's assertion that my client has a history of violent rhetoric especially incredulous is that it is based upon an anonymous tip to the FBI (Page 18-19, "On January 10, 2021, the FBI received an anonymous tip stating: "Scott Fairlamb has a history of violent threats and did participate in Stop the Steal Rally. Unfortunately he deleted all social media accounts after riots.").

The FBI attempted to interview the Defendant on January 14, 2021. On January 22, 2021, the FBI arrested the Defendant and executed a search warrant of his home. If Mr. Fairlamb were truly a danger to the community, the FBI, with all their prodigious resources, would certainly not have waited eight-days to arrest him.

In the winter of 2020, Mr. Fairlamb self-organized a clothing drive to provide proper attire to those less fortunate than himself. Mr. Fairlamb filled a

van with clothes and delivered them to a food shelter in Paterson, New Jersey and then personally entered Lou Costello Park, also in Paterson, in order to hand deliver winter coats to the homeless.

Some of Mr. Fairlamb's clients at Fairlamb Fit are persons with special needs whom he trains without cost to them. Mr. Fairlamb recently employed a homeless man by the name of "Scotty" who in return for sweeping the gym, was fed and permitted to sleep in the gym. When my client gave Scotty a mountain bike, Scotty rode off and never returned.

Under the Bail Reform Act, pretrial detention is the exception and not the norm. See United States v. Salerno, 481 U.S. 739, 755 (1987). The Government must establish that the defendant presents a continued "articulable threat to an individual or the community" that cannot be properly ameliorated by conditions of release (Salerno, 481 U.S. at 751). Mr. Fairlamb has not been shown to be of any threat to any individual or to the community in which he lives and to where he would be restricted if released with conditions.

It is clear that Mr. Fairlamb is neither a risk of flight or a danger to the community. Mr. Fairlamb does not pose a concrete, prospective threat to the community or any other person that cannot be mitigated by strict conditions. It is also clear that conditions exist to more than reasonably assure the safety of any other person or community. If the Court releases Mr. Fairlamb, he will strictly abide by any and all conditions set upon him.

Respectfully submitted,

Harley D. Breite, Esq.

cc: AUSA Leslie A. Goemaat
    AUSA Gauri Gopal